BOARD OF WATER COMMISSIONERS OF THE CITY OF
DETROIT *v.* VILLAGE OF HIGHLAND PARK.

1. MUNICIPAL CORPORATIONS—WATER SUPPLY—CONTRACTS—CITIES
   —WATERS AND WATERCOURSES—STATUTES.

   Where it was stipulated in a written contract between the
   city of Detroit and the village of Highland Park that the
   city should supply water to the village and the mains
   were laid and paid for by the former, in the absence of
   any apparent purpose to be governed by the local act
   permitting the municipality to construct and own a water
   system outside its own limits, Act No. 284, Local Acts
   1883, § 23 (not referred to in the contract), the said
   statute did not apply, especially where the parties pro-
   ceeded to act during a long period of time on the opposite
   construction, the village selling the water to its residents
   and the city being paid by the village; the mains belonged
   to the village of Highland Park, in which they were lo-
   cated, upon the installation of a water system of its own,
   and the court would not restrain the village from inter-
   fering with them.

2. SAME—EQUITY—DECREE.

   Where the party defendant in its pleading offered to sub-
   mit to any equitable arrangement for the benefit of those
   persons that were supplied through the village mains,
   beyond the boundaries of either municipality, and their
   rights could be preserved by a clause in the decree grant-
   ing to the city the right to lay mains in the village streets,
   *held*, that the complainant city was properly authorized
   to lay a supply main through the village streets to pro-
   vide for the service of the water consumers beyond the
   village limits.

Appeal from Wayne; Hally and Mandell, JJ. Sub-
mitted April 10, 1916. (Docket No. 40.) Decided
September 26, 1916.

Bill by the Board of Water Commissioners of the
city of Detroit against the village of Highland Park for

an injunction restraining defendant from interfering with the water supply system of complainant. From a decree for defendant, complainant appeals. Affirmed.

*William E. Tarsney* and *Walter Barlow* (*Harry J. Dingeman* and *Richard I. Lawson,* of counsel), for complainant.

*Edwin S. Bartlett* (*Alfred Lucking,* of counsel), for defendant.

PERSON, J. This is a suit by the board of water commissioners of the city of Detroit to enjoin the village of Highland Park from interfering with or molesting the water supply system in that village. The fundamental question is one of ownership. The system for distributing water in the village was originally installed, and has been from time to time enlarged, by complainant, but the cost of the installation, and of all enlargements, including labor and expense of every kind, has been paid by the village. Following the construction of this water system complainant has for many years supplied the village with water. During this time both the city and the village have grown rapidly, and in 1913 it became evident to the village authorities that the supply of water furnished by complainant was inadequate to the wants of the village. When the village asked for a larger supply and greater pressure for fire protection, it was told by complainant that neither was possible at present, and that when better facilities were acquired the board felt bound to take care of the city first. Thereupon the village proceeded, at great expense, to construct for itself a supply system by which water could be brought within its limits from Lake St. Clair. Upon being informed that this new supply system was nearing completion, and that it would soon be connected with the distributing mains in the village, and the water from the city

shut off, complainant filed this bill, claiming ownership of the distributing mains and pipes, and asking that the village be restrained from interfering with them.

As has been said, complainant bases its right to maintain this suit upon the claim that it owns the water mains and pipes, and the distributing system generally in the village, and that therefore the village may not legally connect its supply system with the mains and pipes and use them as its own property. The village authorities, on the contrary, deny the ownership asserted by complainant, and insist that the entire water system belongs to the village. As bearing upon this issue, the contract between the village and complainant, under the provisions of which the system was installed, has been read in evidence; the charter rights and powers of the respective parties have been called to the attention of the court; and the method of handling the system and supplying water to the village, since the system was first installed, has been shown.

As the foundation of its claim of ownership, complainant refers to section 23 of the act creating the board of water commissioners of the city of Detroit, which at the time the system was put in read as follows (section 23, Act No. 284, Local Acts 1883):

"The commissioners shall have power to extend their distributing pipes, aqueduct, and mains, and erect hydrants without the limits of said city, and to regulate, protect, and control such portions of their works and the water supply therefrom in the same manner that they may regulate, protect, and control their works and the water supply within the city: *Provided*, that before any water shall be supplied to any person or persons residing outside the limits of the city the entire cost of the distributing pipes necessary to supply such person or persons shall be paid to the said board,

and all such distributing pipes through which any water shall be supplied by said water board shall be the property of said board and form part of its system of distributing pipes: *And provided further,* that the rates at which water shall be sold to persons residing outside the city limits shall be discretionary with said board of water commissioners, but such rates shall not exceed double the rates charged within the city limits."

It is urged in behalf of complainant that this section constituted its only authority for laying water mains and pipes outside the city, and that therefore its installation of the water system in the village must be presumed to have been under its provisions, and that the village must be held to have known, as a necessary consequence, that the distributing pipes became the property of the board and part of its distributing system. This section of the act, say counsel for complainant, should be read into the contract for installing the water system and as a part of it. And the importance of this contention becomes apparent when it is observed that neither the contract itself nor any record of either party relating to it, so far as shown to the court, makes any provision for ownership of the pipes by complainant. The contract, or so much of it as need be quoted, is as follows:

"Memorandum of agreement made this twelfth day of December, 1896, between the board of water commissioners of the city of Detroit, party of the first part, and the village of Highland Park, by James F. Hickey, its president, and E. Ketcham, its clerk, party of the second part, witnesseth as follows:

"(1) The said party of the first part hereby acknowledges the receipt of the sum of twenty thousand three hundred and seventy-seven dollars ($20,377), and in consideration thereof it hereby agrees to furnish to said village a water supply system in the village of Highland Park to be operated from the water system of said board of water commissioners; said water supply system to consist as follows: [Here follow specifications.]

" (2) The said village of Highland Park by and through its said president and clerk, who are thereto authorized by a resolution of the village council, a copy whereof is hereto attached, hereby recite that the aforesaid resolution is adopted by said village council under authority of a vote of the electors of said village at a special election held therein for that purpose on the twenty-fifth day of May, 1896, and hereby agree that the plans and specifications hereinabove recited are the ones referred to in the resolution, a copy of which is hereto annexed, and that when the same are executed and completed in a good and workmanlike manner the same will be accepted as performance of this contract. It is understood that the above-mentioned prices do not include the cost of supplying any water through said pipe.

"In witness whereof the board of water commissioners of the city of Detroit has caused these presents to be signed by its secretary and to be attested by the seal of said corporation, and the said village of Highland Park has caused the same to be signed by its president and clerk, and to be attested by its village seal by the clerk thereof."

Taking this contract as it reads and without reference to the statute, together with the conceded facts that the water system to be thereunder constructed was to be located in the village and for the benefit of the village, and that the entire expense of its installation was to be paid by the village, the only possible construction that can be given it is that the system and the pipes and parts going to make it up were to belong to the village. And it must be so held unless the natural interpretation of the contract is to be affected by the statute referred to.

Turning, then, to a consideration of the statute, we think counsel for complainant are mistaken when they assume that the board was necessarily acting under the provisions of section 23 when it contracted to install and did install the water system in the village. That section of the act creating the water board does

not provide for such a contract as this with another municipality. It contemplates simply an extension of the distribution pipes of the city and the furnishing of water to individuals in the ordinary way. *Rehill* v. *City of East Newark and City of Jersey City*, 73 N. J. Law, 220, 223 (63 Atl. 81). By the terms of the statute the actual cost of distributing pipes was to be paid before the board could supply any person or persons residing outside the city with water. The contract makes no reference to actual cost, and does not contemplate furnishing water to any individual or individuals. It is an agreement to furnish to another municipality a system for distributing water; and it is an agreement to furnish the system for a certain fixed price, leaving to the board the chance of profit or loss as the case may be. With the statute the extension of the city pipes and the payment of the cost of such extension are but incidental to the main object, which is the furnishing of water. With the contract the main object is to furnish a system for distributing water, without any definite agreement to supply water at all. In fact, the water board now notifies the village, in substance, that it is under no obligation to furnish it sufficient water, and will not do so unless it has a surplus above the needs of the city. There is nothing, therefore, in the statute that can be read into the contract, or used to modify or change its terms. There is nothing in it applicable to such a contract. All reference to the statute in the contract was properly omitted, whether the omission was intentional or accidental. Nor has the subsequent conduct of the parties been in keeping with any purpose on either side to act under the statute. The board has supplied water at the village limits to the village itself, and the village has distributed the water to individual users, fixing its own rates and collecting the compensation. And as to the village it is doubtful whether it had any

authority to issue bonds, or tax its inhabitants, for the purpose of constructing a water supply system to be owned by another municipality, or by the agency of another municipality. We find, therefore, no foundation for the claim that the board of water commissioners of the city of Detroit owns the water supply system in the village of Highland Park, or any portion of it.

In disposing of this branch of the case upon the grounds stated we are not to be understood as rejecting the theory of the circuit judges in their decision. Our construction of the contract, and of the statute upon which complainant relies, removes the ground upon which that theory was based and makes its consideration unnecessary. Nor is it necessary that we should determine whether or not the contract was *ultra vires* as to complainant. It was fully executed long ago, and it has not been claimed that complainant, or the city of Detroit, suffered any loss or injury through its performance.

But, although complainant has no proprietary rights in the water system of the village, the situation is complicated by the fact that complainant has for a considerable period of time been furnishing residents and city property north of the village with city water through the village mains. This method of supplying water beyond the village came from an arrangement between the village and complainant. The course pursued has been to charge the village for the water passing into its pipes, and to credit it with the water passing out of them into the territory on the other side. Having thus permitted the people beyond the village to rely upon such water supply, it cannot be summarily cut off. Nor does the village desire to cut it off. It simply aims to use its own distributing pipes in furnishing its citizens from its own water supply. This is made necessary by complainant's position, jus-

tifiable, probably, that it will not attempt to provide the village with sufficient water so long as the water is required by the city itself. It appears from the record that before suit was begun the village sought to make some suitable arrangement with complainant to take care of the people supplied through its pipes, and that complainant did not respond to the suggestion. The village again in its pleadings reiterates its offer to submit to any equitable arrangement for the benefit of the territory beyond its boundaries. Under these circumstances the circuit judges incorporated in their decree provisions requiring, in substance, that upon request of complainant the village shall grant a right of way through its streets along which complainant may lay a supply main for the purpose of furnishing water to consumers and property north of the village, and that the village shall supply water to such consumers and to Palmer Park until complainant is in readiness to furnish such supply. To these provisions complainant objects, not upon the ground that they are inequitable or inexpedient, but because, as it insists, the court has no power to insert them in its decree, and is attempting to make a contract for the parties.

The answer to these objections is that the provisions in the decree do not constitute a contract. They are required for the protection of paramount rights, and are also for complainant's benefit. The construction of the supply main is optional with complainant, and is in the nature of a burden upon the village, which has practically consented thereto in its answer, and does not appeal. Such conditions are incident to the nature of the controversy submitted by the parties, and are within the powers of a court of equity.

The decree is affirmed, with costs to defendant.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred.